UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


SCOTT BUTLER                                    CIVIL ACTION

VERSUS                                          NO. 3:12-cv-00420-BAJ-RLB

STATE OF LOUISIANA DEPARTMENT
OF PUBLIC SAFETY AND
CORRECTIONS, et al


---

## ORDER

---

Before the Court is Defendants' Motion to Compel ("Motion") responses to Interrogatory No. 7 and Request for Production Nos. 5 and 7, filed on November 12, 2012. (R. Doc. 11). Plaintiff filed a Memorandum in Opposition ("Opposition") on November 24, 2012. (R. Doc. 12).  Oral argument was held on April 30, 2013 (R. Doc. 18).  For the reasons discussed below, Defendants' Motion is **DENIED**.

I.      **BACKGROUND**

In this action, Plaintiff alleges that Defendants regarded him as disabled in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(a), 12102(1)(C), by requiring him to submit to an excessive psychiatric fitness-for-duty evaluation,  denying him overtime opportunities and placing him on involuntary leave.[1] (R. Doc. 9 at ¶ 5).  According to Plaintiff,

---

[1] Additionally, Plaintiff alleges that Defendants regarded him as disabled by: (1) assigning him to desk duty; (2) extending his orientation period upon his return to patrol; (3) overly scrutinizing and monitoring his behavior; (4) subjecting him to a hostile work environment; and (5) preventing him from working overtime. (R. Doc. 9 at ¶¶ 5, 15-21). Plaintiff also alleges harassment under the ADA. Plaintiff asserts identical claims under both

Defendants based their decisions on perceived impairments—obsessive compulsive disorder and "germaphobia." (R. Doc. 9 at ¶ 11). Plaintiff also claims that Defendants' decision to place him on involuntary leave violated the Family and Medical Leave Act, 29 U.S.C. § 2561(a)(1). (R. Doc. 9 at ¶ 10). Finally, Plaintiff claims that Defendants' conduct deprived him of his constitutional right to equal protection and that his right to privacy was violated when Defendants submitted him for psychiatric evaluation and later disclosed information relevant to his evaluation to non-privileged employees. [2] (R. Doc. 9 at ¶¶ 5, 9, 12).

In their Answer, Defendants deny that they regarded Plaintiff as disabled and claim that "Plaintiff posed a direct threat to the health and safety of others in the workplace based on his behavior and the inherently dangerous nature of law enforcement." (R. Doc. 3 at 2). Defendants also assert that their employment decisions were based on legitimate nondiscriminatory reasons. (R. Doc. 3 at 2).

On August 6, 2012, Defendants propounded their first set of discovery requests, consisting of requests for interrogatories and production of documents. (R. Doc. 11-3). Plaintiff responded to the requests on October 4, 2012, raising objections to Defendants' Interrogatory No. 7 and Request for Production Nos. 5 and 7:

**INTERROGATORY NO. 7:**
Identify each and every medical provider that treated you for any psychiatric problems, including counselors and psychologists, in the last 10 years.

**ANSWER TO INTERROGATORY NO. 7:**
Plaintiff objects to this interrogatory on grounds that it is not relevant to any claim or defense. He is not seeking damages for emotional distress.

---

the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Louisiana's Employment Discrimination Law, La. R.S. 23:303(C).

[2] For purposes of the instant motion, the elements of Plaintiff's constitutional claims do not warrant a separate analysis as they are covered under the analysis of his ADA and FMLA claims.

**REQUEST FOR PRODUCTION NO. 5:**
Please produce certified copies of any and all medical records and reports of any and all healthcare providers, including but not limited to, hospital records, doctor, chiropractor, physical therapy, psychological and counseling records, reports, notes charts and bills pertaining to you alleges injuries and/or treatment or examination of the injuries and/or treatment or examination of the injuries alleged by you as a result of the incident described in your Complaint.

**ANSWER TO REQUEST FOR PRODUCTION NO. 5:**
Plaintiff does not claim physical injury or emotional injury. He objects to this request on grounds that it seeks information not relevant.

**REQUEST FOR PRODUCTION NO. 7:**
Please produce the attached duly executed and fully completed Authorization for Release of Protected Health Information.

**ANSWER TO REQUEST FOR PRODUCTION NO. 7:**
Plaintiff objects to the request for production of health information. Protected health information is not relevant to his claim for damages or to any defenses.

(R. Doc. 11-4 at 5, 12).  Following Plaintiff's objections, Defendants moved this Court to compel responses, arguing that Plaintiff's psychiatric records are relevant and necessary components of Plaintiff's causes of action and their defenses. (R. Doc. 11).  Oral Argument was held on April 30, 2013. (R. Doc. 18).

During oral argument, counsel for both parties provided the Court with information regarding the psychiatric medical information/evaluations considered by Defendants to determine Plaintiff's fitness for duty in February of 2011. (R. Doc. 19 at 1).  According to Defendants' counsel, Defendants received medical information from three medical providers. First, Department of Public Safety and Corrections psychologist, Dr. Cary Rostow, evaluated Plaintiff and provided Defendants with his medical report on or about February 8, 2011. (R. Doc. 20 at 3).  Second, Plaintiff's nurse practitioner, Theresa Stewart, APRN, CNS, submitted a document to Defendants explaining Plaintiff's fitness for duty. (R. Doc. 20 at 1).  Third,

Plaintiff's treating psychiatrist, Dr. James Patterson, provided his medical evaluation to Defendants, dated February 10, 2011. (R. Doc. 20 at 11).  Defendants' counsel explained that these three documents account for the medical information known to Defendants at the relevant time period—between November 2010 and March 2011. (R. Doc. 19 at 1-2).  These documents were submitted under seal, at the Court's request. (R. Doc. 19).

## II.    LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  A relevant discovery request seeks information that is "either admissible is reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)) (alterations in original). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1).

Federal common law recognizes a psychotherapist-patient privilege protecting the communications between a patient and a licensed psychotherapist made during the course of treatment. *Jaffe v. Redmond*, 518 U.S. 1, 15 (1996) ("confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure") (citations omitted).  Privileged information falls outside of the scope of discovery, absent a waiver. *Jaffe*, 518 U.S. at 15 n. 14.

Courts have held that the privilege is waived by the patient in certain circumstances.  *See Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (citing cases).  The most common of these circumstances is where the patient has placed his mental condition at issue. *Schoffstall*, 223 F.3d at 823.

## III.   DISCUSSION

Defendants seek disclosure of Mr. Butler's psychiatric records within the past ten years and his medical records pertaining to any injuries alleged in his Complaint. (Defs.' Req. for Interrog. No. 7, R. Doc. 11-3 at 3; Defs.' Req. for Produc. No. 5, R. Doc. 11-3 at 8).  Defendants additionally ask the Court to compel Plaintiff's execution of an "Authorization for Release of Protected Health Information." (Defs.' Req. for Produc. No. 7, R. Doc. 11-3 at 8).  In their Motion to Compel, Defendants clarify that they seek production of Plaintiff's psychiatric records only. (R. Doc. 11 at 1).  Even if the records are relevant, because these records fall within the psychotherapist-patient privilege, the records are not subject to production without waiver. *Jaffe*, 518 U.S. at 15 n.14.

If the Court determines, however, that proof of the elements of Plaintiff's causes of action requires the use of the privileged material, then the Court is proper to conclude that the psychotherapist-patient has been waived.  Analysis therefore turns to the elements (and defenses) of those causes of action.

### A.   Americans with Disabilities Act

The ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  To establish a *prima facie* violation of the ADA, a plaintiff must show that he or she was (1) disabled within the meaning of the ADA, (2) qualified for the position, and (3) subjected to an adverse employment action because of his or her disability. *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998).[3]  If the plaintiff meets these requirements, a presumption of discrimination arises which the defendant must then rebut by articulating a legitimate nondiscriminatory reason. *Bodenheimer v.*

---

[3] Whether Plaintiff suffered an adverse employment action "because of his disability" is not part of the Court's analysis because the parties have not alleged that his medical records are at issue to establish whether Defendants' acted with discriminatory intent.

*PPG Indus. Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).  Additionally, the defendant may be relieved of liability for the "den[ial] of a job or benefit," that would otherwise violate the Act, by showing the plaintiff posed a direct threat. 42 U.S.C. § 12113(a)-(b).

### i.    Regarded As Disabled

A plaintiff may be disabled in one or more of three ways—having an actual disability, having a record of a disability or being regarded as disabled. 42 U.S.C. § 12102(1)(A)-(C). Here, Plaintiff alleges that he was regarded as disabled in violation of the ADA. (R. Doc. 9 at 3). Defendants deny this allegation and argue that "[i]f [Plaintiff] has an impairment that is substantially limiting, [Plaintiff] cannot be regarded as disabled under the ADA." (R. Doc. 11-1 at 4).  For that reason, Defendants argue that Plaintiff has waived the psychotherapist-patient privilege because his medical records are "centrally relevant as to whether he could be regarded as disabled." (R. Doc. 11-1 at 4).  Plaintiff opposes the records request as privileged and irrelevant. (R. Doc. 12 at 7, 15).

The Court agrees with Plaintiff. As a matter of law, an individual who is actually disabled can, at the same time, be regarded as disabled under the ADA. 42 U.S.C. § 12102(3)(A).  In fact, the ADA was amended in 2008 to clarify the intended function of the regarded as prong—that it be used by individuals, like Mr. Butler, who are "not challenging a covered entity's failure to make reasonable accommodations." 29 C.F.R. § 1630.2(g)(3).  After the 2008 amendments, an individual is regarded as disabled if he or she was (1) "subjected to an action prohibited under" the ADA, (2) because of "an actual or perceived" impairment regardless of whether the impairment is, or is perceived to be, substantially limiting. 42 U.S.C. § 12102(3)(A).

Contrary to Defendants' argument, the ADA's Regulations further explain that whether an individual is actually disabled "is not relevant to coverage under . . . the 'regarded as' prong."

29 C.F.R. § 1630.2(j)(2).  Plaintiff is clear that he is only proceeding under the "regarded as" prong.  Plaintiff also explained that he does not intend to present medical evidence "beyond [the] information known to the [Defendants] at the time" of the alleged adverse employment actions. As such, Plaintiff has not waived the privilege because he did not place his mental health "at issue" by claiming he was regarded as disabled. *See Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 448 (N.D.N.Y. 2000) ("defendants[] need not explore plaintiff's psychiatric history in order to defend against an allegation of perceived disability . . . [T]he finding that plaintiff waived his psychotherapist-patient privilege by asserting a perceived-disability ADA claim is clearly erroneous and contrary to law.").

### ii.    Qualified Individual

In addition to showing he is "disabled" within the confines of the ADA, Plaintiff must also establish that he is qualified to perform the functions of a Louisiana State Trooper. *See* 42 U.S.C. § 12111(8). The ADA defines "qualified individual" as someone "who, with or without a reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).  Plaintiff asserts that he is qualified to perform the essential functions of the job and that his medical records are irrelevant to establish this element. (R. Doc. 12 at 21). Rather, Plaintiff argues that his past job performance and evaluations are the best evidence of his qualifications. (R. Doc. 12 at 21).  Defendants, however, allege that Plaintiff is not qualified to perform his job safely, without posing a direct threat to himself or others. (R. Doc. 11-1 at 4). Defendants argue that "Plaintiff's psychiatric condition is the principal factual issue which is probative of whether the Plaintiff has a condition that renders him unable to perform the essential functions of his job, i.e. a disability under the ADA." (R. Doc. 11-1 at 2).  For that reason, Defendants contend that Plaintiff's psychiatric records will further legitimize and highlight the

reasonableness of their concerns about Plaintiff's ability to perform his job. (R. Doc. 11-1 at 4-5).

The Court is not persuaded by Defendants' argument. Being "disabled" and "qualified" are not antithetical; both may actually be necessary elements of an ADA claim. *See, e.g.,* 42 U.S.C. § 12112(8) (defining the term "qualified individual with a disability"); *Picard v. St. Tammany Parish Hosp.*, 423 Fed. Appx. 467, 469 (5th Cir. 2011) ("The ADA protects qualified individuals with disabilities from discrimination."). The plaintiff bears the burden of proving he is qualified to perform the essential functions of the position. *Kapche v. City of San Antonio*, 176 F.3d 840, 842 (5th Cir. 1999). At oral argument, Plaintiff clarified that he intends to offer his past performance evaluations as evidence that he can perform the job's essential functions. More importantly, Plaintiff explained that he did not intend to offer medical information.

While the Court makes no finding of whether Plaintiff is qualified, the Court notes that evidence of past performance is a recognized method of proving an individual is qualified under the ADA. *See, e.g., EEOC v. E.I. DuPont de Nemours*, 480 F.3d 724, 731 (5th Cir. 2007) (plaintiff's eighteen years of performing the job indicated her qualification for the position); *McAlpin v. Nat'l Semiconductor Corp.*, 921 F.Supp. 1518 (N.D. Tex. 1996) (plant worker could use his ten years of past performance to establish he was qualified). Because Plaintiff does not intend to present ancillary medical information, the requested medical records are irrelevant to this element of Plaintiff's *prima facie case.* And so, Plaintiff has not placed the requested medical records at issue.

### iii. Legitimate Nondiscriminatory Reason

A defendant's intermediate burden of establishing a legitimate nondiscriminatory reason serves "to frame the ultimate factual issue of discrimination . . . with sufficient clarity." *Turner v.*

8

*Kan. City S. Ry. Co.*, 675 F.3d 887, 901 (5th Cir. 2012) (quoting *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981) (alterations in original)). [4]   In a disparate treatment claim, "the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made, [thus] a justification that could not have motivated the employer's decision is not evidence that tends to illuminate the ultimate issue and is therefore simply irrelevant." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (courts should conduct a snapshot inquiry into the employer's motive at the exact instant the decision was made)); *see also Perez v. Tx. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) ("The evidence relevant to determining whether [defendant] discriminated against plaintiff] is evidence that goes to what [defendant] knew at the time [defendant] . . . recommended [plaintiff's] termination.").

Defendants deny violating the ADA and argue that their employment decisions were legitimate and nondiscriminatory because they were based on Plaintiff's "bizarre" and "unusual" behavior.  Defendants compel disclosure of Plaintiff's psychiatric records to legitimize their safety concerns because "[t]he records will most likely show that Butler, in fact, suffered from a psychiatric condition." (R. Doc. 11-1 at 4).  Plaintiff alleges, among other things, Defendants' fitness for duty evaluation was an illegal medical inquiry and/or adverse employment action,

---

[4] The Court applies the burden-shifting framework originally established by the Supreme Court in *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973), a disparate treatment claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  Because the *McDonnell Douglas* framework is applicable to alleged violations of Title VII, the ADA and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Court relies on relevant cases decided under all three statutes. *See, e.g., Turner v. Kan. City S. Ry.*, 675 F.3d at 891-92 (applying *McDonnell Douglas* to Title VII); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (applying *McDonnell Douglas* to an ADA claim); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether it is, we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* utilized in Title VII cases is appropriate in the ADEA context.") (internal citations omitted)).

prohibited by the ADA. 42 U.S.C. § 12112(d)(4)(b).[5]  Plaintiff argues that the legitimacy of

Defendants' conduct is not determined by the existence of an actual disability. (R. Doc. 12 at 15-

16).  Instead, the legitimacy of an employer's conduct depends upon whether the circumstances

and facts, existing at the time of the adverse action, could justify the employer's "concern about

the employee's ability to do his job." (R. Doc. 12 at 16).  In this case, Defendants ordered

Plaintiff to undergo a mental health examination to assess his fitness for duty.  Defendants later

used the evaluation's results to determine whether Plaintiff posed a direct threat, as discussed in

the following section.[6]

The ADA permits an employer to "require a medical examination (and/or inquiry) of an

employee that is job-related and consistent with business necessity. 29 C.F.R. § 1630.14(c)

(allowing "inquiries into the ability of an employee to perform job-related functions.").  To show

Plaintiff's psychiatric evaluation complied with the ADA, Defendants must demonstrate they had

reason to believe Plaintiff could not safely perform the job prior to the evaluation.  *See, e.g.,*

*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999) ("for an employer's request

for an exam to be upheld, there must be significant evidence that could cause a reasonable person

to inquire as to whether an employee is still capable of performing his job"); *Brownfield v. City*

*of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2011) ("the business necessity standard may be met

before an employee's work performance declines if the employer is faced with 'significant

evidence that could cause a reasonable person to inquire as to whether an employee is still

---

[5] It may violate the ADA to "require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability." 29 C.F.R. § 1630.13(b).

[6] The Court first analyzes Defendants' legitimate non-discriminatory reason for its initial decision to send Plaintiff for a psychiatric evaluation because it is separate and distinct from Defendants' affirmative defense of direct threat.

capable of performing his job . . . [T]here must be genuine reason to doubt whether that employee can perform job-related functions.").

According to Defendants, they based their decisions off of Plaintiff's behavior. However, Defendants now seek additional records that are subject to the psychotherapist-patient privilege to seemingly justify the reasons given for their previous employment actions.

To establish their given reason for the evaluation, Defendants must present evidence of the actual behavior exhibited by Plaintiff and observed by Defendants.[7] Defendants' argument—that Plaintiff's "records will show that Butler, in fact, suffered from a psychiatric condition,"—is misguided. (R. Doc. 11-1 at 4). Plaintiff might be diagnosed with a mental impairment. Plaintiff might have also communicated with his doctor about his behavior.[8] However, the fact that the diagnosis exists does nothing to illuminate the *actual* behavior observed by Defendants that raised doubts about Plaintiff's qualifications.

Any records Defendants could obtain at this time could not have motivated Defendants' decisions at the moment they were made. As such, Plaintiff's medical records are not relevant nor are they "reasonably likely to lead to the discovery of admissible evidence," as they relate to this particular defense. Fed. R. Civ. P. 26(b). For those reasons, they are not at issue and Plaintiff has not waived the psychotherapist-patient privilege.

### iv.    Direct Threat

Defendants argue that Plaintiff's medical records are relevant to establish that he cannot safely perform the essential functions of patrolman, and by extension, poses a direct threat. (R.

---

[7] Defendants' legitimate nondiscriminatory reason pertains not only to Plaintiff's alleged unlawful psychiatric evaluation/medical inquiry, but also to his claims of involuntary leave, prolonged orientation, increased monitoring, denial of overtime work and desk duty.

[8] Defendant alleged at oral argument that Plaintiff may have made contrary remarks to his psychiatrist when compared to other statements. Presumably, the fact of inconsistent statements could be used to cross examine Plaintiff and are therefore relevant. Simply because Defendant may be able to establish relevancy, however, does not mean the privilege has been waived.

11

Doc. 11-1 at 3).  Under the ADA, an employer is relieved of liability for the "den[ial] of a job or benefit," that would otherwise violate the Act, by showing the employee posed a direct threat. 42 U.S.C. § 12113(a)-(b).  The statute defines "direct threat," as a "significant risk to the health or safety of others that cannot be eliminated by a reasonable accommodation." 42 U.S.C. § 12111(3).  The ADA requires employers to conduct an individualized assessment of the [employee's] present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r).  The employer's determination that an employee poses a significant risk to health or safety must be based on "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r); *see also Kapche*, 403 F.3d at 498 ("individualized assessment is required under the direct threat inquiry"). If the employee does pose a significant risk, to avail itself of the defense, the employer must show that the risk could not be reduced or eliminated by a reasonable accommodation. 29 C.F.R. § 1630.2(r).  "Before excluding an individual from employment as a direct threat," an employer must engage in an interactive process with the employee to determine the availability of an effective accommodation that would reduce or eliminate the treat." *Echazabal v. Chevron USA*, 336 F.3d 1023, 1028 (9th Cir. 2003) (citing 29 C.F.R. § 1630.9); *see also EEOC v. E.I. DuPont de Nemours & Co.*, 406 F. Supp. 2d 645, 652 (E.D. La. 2005), *aff'd in part, rev'd in part on other grounds*, 480 F.3d 724 (5th Cir. 2007) (defendant has ultimate burden of proving direct threat, including proving that any threat could not be eliminated by reasonable accommodation).

Under the direct threat defense, an otherwise qualified employee—someone capable of performing the job's essential functions—becomes effectively unqualified by his inability to *safely* perform the essential functions of the job.  *See Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 276, 284, 287 (1987) (because plaintiff performed the essential functions of the job for

over ten years, she is unqualified because of her tuberculosis upon a showing of direct threat);

*EEOC v. Exxon*, 203 F.3d 871, 874 (5th Cir. 2000) (direct threat is applicable when an employer

"impose[s] a safety standard in an individual's particular case separate from the general

qualification standards required for the position").  For that reason, the defense is applied where

an employee or applicant has been "den[ied] a job or benefit," as unqualified. 42 U.S.C. §

12113(a).

To establish its affirmative defense, Defendants must show they conducted an

individualized assessment, based on "a reasonable medical judgment that relies on the most

current medical knowledge and/or on the best available objective evidence." 29 C.F.R. §

1630.2(r).  As the parties explained to the Court during oral argument, the three evaluations from

Dr. Rostow, Dr. Patterson and NP Stewart account for the medical knowledge known to

Defendants at the time of the alleged adverse actions. (R. Doc. 19 at 1-2).  The medical records

that Defendants now wish to obtain were obviously unknown to Defendants at the time when

they allege Plaintiff posed a direct threat.  Therefore, the records "could not have motivated the

employer's decision [and are] not evidence that tends to illuminate the ultimate issue," and by

extension, are not at issue in this litigation. *Patrick*, 394 F.3d at 319.

**B.      Family and Medical Leave Act**

The Court now examines a more difficult issue—whether Plaintiff put his medical

condition "at issue" by bringing a claim under the FMLA. 29 U.S.C. § 2615(a). The FMLA

provides eligible employees with 12 weeks of job protected leave per year for "a serious health

condition that makes the employee unable to perform the functions of the position." 29 U.S.C. §

2612(a)(1)(D).  Among other things, the FMLA prohibits an employer from "interfer[ing] with,

restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under

13

[the Act]." 29 U.S.C. § 2615(a). Here, Plaintiff has brought an "involuntary leave claim," alleging Defendants forced him "to use leave when he had no condition that required the use of leave." (R. Doc. 9 at 7).

Plaintiff's involuntary leave claim "defies the conventional pattern." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 417 (5th Cir. 2006) (examining what constitutes involuntary leave and what are the parties rights and obligations). Plaintiff does not allege that he later sought leave but was denied because Defendants previously forced him on involuntary leave. Rather, Plaintiff alleges that Defendants placed him on leave when he did not have a serious health condition. (R. Doc. 9 at 7). At oral argument, Defendants explained that Plaintiff was placed on involuntary leave pending the results of his fitness for duty evaluation and that he was returned to work after his treating physician, Dr. Patterson, declared him fit for duty. Defendants argue that Plaintiff's medical records are at issue because he must establish that he did not have a serious health condition at the time Defendants placed him on leave. (R. Doc. 11-1 at 6). Plaintiff argues that Defendants "cannot use after-acquired [medical] evidence to justify forcing [him] to use Family Medical Leave." (R. Doc. 12 at 23).

An FMLA involuntary leave claim is considered a type of interference claim prohibited under Section 2615(a). Some courts have stated that a plaintiff may have an involuntary leave claim when the employer forces the plaintiff to take leave despite not having a qualifying serious health condition under the FMLA. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) (explaining the elements of a cause of action for involuntary leave). However, the claim does not ripen until the plaintiff "seeks FMLA leave at a later date, and such leave is not available because the [plaintiff] was wrongfully forced to use FMLA leave in the past." *Wysong,* 503 F.3d at 449.

14

There is nothing in the record to indicate that the plaintiff sought leave on a later date but it was unavailable because he was forced to improperly use it here.  As such, the Court notes that Plaintiff's cause of action (and the elements and defenses that the Court must consider) is not clear.  The Fifth Circuit, as well as the MDLA District Court, has previously noted that forced or involuntary leave is not, in and of itself, actionable under the FMLA.  *See Willis*, 445 F.3d at 417 (noting "it is not contrary to the FMLA for an employee to be placed on 'involuntary FMLA leave."); *Moss v. Formosa Plastics Corp.*, 99 F. Supp. 2d 737, 741 (M.D. La. 2000) ("Nothing in the statute prevents the employer from requiring an employee to take this leave, if the statutory conditions are otherwise met."); *Heyne v. HGI-Lakeside, Inc.*, 589 F. Supp. 2d 1119, 1128 (S.D. Iowa 2008) (same).  Therefore, the elements of Plaintiff's claim are uncertain.  The Court looks to treatment in analogous cases regarding involuntary leave in order to determine whether Plaintiff's medical records are at issue.

In *Willis v. Coca Cola Enterprises, Inc.* the Fifth Circuit considered "what constitutes involuntary FMLA leave and what are the parties' rights and obligations pursuant to this type of leave." 445 F.3d at 417.  In that case, the Court focused on the information that was made available to the employer in making the decision to put the employee on leave.  Relying on "the statutory language of the FMLA and the relevant caselaw from [its] sister circuits" the court held that, "even in the case of involuntary leave . . . the employee [must] provide [the employer with] notice of a 'serious health condition.'" 445 F.3d at 418-19 (citing 29 C.F.R. § 825.112(a)(4)).  Thus, the FMLA is not implicated until "the employee has provided sufficient information to 'allow the employer to determine that the leave qualifies under the Act,'" despite which party initiates the leave.  *Id.* at 419 (quoting 29 C.F.R. § 825.208(a)(1) (current version at 29 C.F.R. § 825.301(b)).

The emphasis *Willis* places on the information available to the employer for purposes of determining notice of a serious health condition at the time of leave is consistent with the procedural rights granted to employers by the FMLA.  The Act allows an employer "who doubts the validity of a medical certification" to require the employee seeking leave to obtain a second or third medical opinion. 29 C.F.R. § 825.307(b)-(c).  This procedural right affirmatively places a responsibility on the employer to seek additional medical information at the time of leave. 29 C.F.R. § 825.301(a) ("where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee").  The FMLA also charges the employer with designating the leave as FMLA qualifying. 29 C.F.R. § 825.301(a) ("employer's decision to designate leave as FMLA–qualifying must be based only on information received from the employee or the employee's spokesperson").  For that reason, this Circuit's previous interpretations of the FMLA's notice requirements explain: "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995).

As these courts have noted, it is the sufficiency of the information made available to the employer that controls.  If Defendants needed more information to determine whether Plaintiff was appropriate for FMLA leave, they should have requested that information at that time.

The Court, however, makes no finding of whether Plaintiff has alleged a viable cause of action under the FMLA.  That being said, considering the parties' rights and obligations under the Act and this Circuit's interpretation of them, the Court finds the relevant inquiry is limited to the information made available to Defendants at the time of leave.[9]  As it pertains to this cause of

---

[9] If the Court were to determine that the facts of this case constitute a waiver of the psychiatric-patient privilege, then employers could simply force any employee to take involuntary leave for simply suspecting the

16

action, Plaintiff has not placed his medical condition at issue as to constitute a waiver of the psychotherapist-patient privilege.

### C.      Plaintiff's Witness

Plaintiff has listed Dr. Patterson, his treating physician as a witness in his initial disclosures. (R. Doc. 11-5 at 1, 3).  Defendants argue that by listing Dr. Patterson as a witness, Plaintiff has waived his psychotherapist-patient privilege. (R. Doc. 11-1 at 2).  Plaintiff asserts that he does not intend to call Dr. Patterson to testify as an expert and only listed him as a witness to the extent Dr. Patterson will be necessary to verify the authenticity of his evaluation that was made available to, and used by, Defendants in making the challenged employment decisions. (R. Doc. 12 at 19).  The Court finds that because Plaintiff does not intend to call Dr. Patterson for any purpose, other than verification of a document, he has not waived his psychotherapist-patient privilege.

### D.      Emotional Injuries

Defendants' Request for Production No. 5 seeks medical records pertaining to any emotional distress or injury resulting from the allegations in his Complaint. (R. Doc. 11-3 at 8). Plaintiff objects to the request because he does not seek damages for emotional distress. (R. Doc. 12 at 19). After reviewing Plaintiff's Petition (R. Doc. 1-2), First Amended Petition (R. Doc. 1-2), and Second Amended Complaint (R. Doc. 9), it is correct that Plaintiff does not assert any claim for emotional damages.  As such, Plaintiff has not placed his psychiatric records at issue as it relates to a claim of damages for emotional distress.  *Doe v. City of Chula Vista*, 196 F.R.D. 562, 565-66 (S.D. Cal. 1999) ("It is the patient who decides whether to file a lawsuit claiming

employee of receiving any mental health treatment and then force them to reveal the substance of that treatment in litigation.  Whether the employer had evidence of a serious health condition or not would be immaterial – as urged by Defendants, for the employee to challenge this action would require him to waive his privilege in every situation.

emotional distress damages, and she has the control over the scope of the litigation, and consequently, the scope of her privilege.")

### E. Medical Release Authorization

Defendants have requested that Plaintiff execute a medical release authorizing them to obtain an unlimited amount of his medical records. (R. Doc. 11-3 at 8). Not only is this request likely to produce copious amounts irrelevant and highly privileged information, "Rule 34 does not permit a party, or the court, to compel another party to sign a [medical] release." *E.E.O.C. v. Resources for Human Development*, No. 10-03322, 2011 WL 3841066, at *1 (E.D. La. Aug. 31, 2011) (recognizing that "[a]lmost 30 years ago, the Fifth Circuit indicated that a plaintiff could not be compelled to sign a blank authorization form that was attached to interrogatories" but in dicta suggested that Rule 34 might, under limited circumstances, give courts the authority to "compel the plaintiff to do so." *Id. at *1-2*) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 482 (5th Cir. 1982)); *see also Klugel v. Clough,* 252 F.R.D. 53, 54–55 (D. D.C. 2008) (same); *Neal v. Boulder*, 142 F.R.D. 325, 327 (D. Colo. 1992) (same). As set forth above, the Court does not find that Defendants are entitled to any evidence that the release would allow them to obtain as it would all be either irrelevant or privileged. The Court will not compel Plaintiff to execute an authorization releasing his medical information within the confines of the Federal Rules of Civil Procedure.

**IV.      CONCLUSION**

For the reasons given above, **IT IS ORDERED** that Defendants' Motion to Compel (R.

Doc. 11) is **DENIED.**

Signed in Baton Rouge, Louisiana, on May 29, 2013.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**