## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SCOTT J. BUTLER**                            **CIVIL ACTION NO. 12-cv-420**

**VERSUS**                                     **JUDGE JACKSON**

**STATE OF LOUISIANA,**                        **MAGISTRATE JUDGE DALBY**
**LOUISIANA DEPARTMENT OF**
**PUBLIC SAFETY AND**
**CORRECTIONS, LOUISIANA**
**STATE POLICE, AND**
**CAPTAIN TOM MADDEN**

## THIRD AMENDED COMPLAINT

Plaintiff incorporates herein by reference, as if set out in full, his Original and

First Amended Petitions and Second Amended Complaint.  Plaintiff files this Third

Amended Complaint to add claims for on-going harassment and termination of

employment, in violation of federal and state laws prohibiting discrimination based

on disability and other state employment law.  The Third Amended Complaint states

as follows:

## I.

## PRIOR PLEADINGS RETAINED

Butler retains his original [Document 1-3] and first amended petition

[Document 1-3] and second amended complaint [Document 9], in full, as

incorporated herein by reference.  Defendants have already filed an answer and defenses to these allegations.

## II.

## ADDITIONAL CAUSES OF ACTION

### STATEMENT OF FACTS

### 26.

Since the filing of Plaintiff's original petition,  Defendants have engaged in a persistent course of conduct reasonably calculated to develop a paper trail of write-ups to terminate Plaintiff's employment while concealing the Defendants' discriminatory intent.

### 27.

In 2012, following Butler's complaint of discrimination, Captain Madden transferred Butler to a unit supervised by Lieutenant Baxter ("Baxter').  Baxter closely scrutinized Butler's work and sent reports to Madden.

### 28.

In the Louisiana State Police Civil Service System, dismissal from employment must be justified by written documentation of cause.  It was Baxter's appointed duty to create and document just cause to terminate Trooper Butler's employment.

29.

Acting upon the instructions of Capt. Madden, but in violation of state law, Lt. Baxter covertly maintained a written log in which he documented adverse comments about Trooper Butler.   Baxter provided information from his secret log to Capt. Madden.

30.

In late 2012, again acting upon Capt. Madden's instructions, Lt. Baxter began to single out Butler's crash reports for review and criticism.   Crash report writing techniques that had been acceptable in Butler's prior crash reports, and were acceptable in the crash reports of other troopers, were suddenly unacceptable to Baxter, with respect to Butler's reports only.

31.

Baxter's mode of operation was to order Butler to make changes  in a written crash report.  When Butler made the changes that had been ordered,  Baxter recorded in his secret log that changes and strike-outs in the report indicated that Butler lacked confidence  or  had  some  psychological  problem  that  prevented  him  from understanding report-writing concepts.   In fact, the changes and strike-outs in the reports had been made upon  Baxter's instructions  and for no other reason.

32.

In December, 2012, Lt. Baxter instructed Butler to make substantive changes in two crash reports. In one case Baxter ordered Butler to change the identity of the fault driver. Butler objected on grounds that the changes would undermine the integrity of the report. Lt. Baxter ordered Butler to make the changes. He also made Butler remain at the Troop after the conclusion of the shift and would not permit Butler to leave until Butler answered written questions about the crash reports.

33.

Butler met with Baxter in Baxter's office to discuss Butler's objections to the changes Baxter had ordered Butler to make in the crash reports. Butler informed Baxter that he had made the changes, as ordered, but if either crash resulted in litigation and he was called to testify about his report, he would testify that he had been ordered to make changes.

34.

Butler's statement angered Baxter. Baxter jumped up from his chair, threw the report at Butler, striking Butler in the arm, and stormed out of the office.

35.

Butler filed a grievance against Lt. Baxter based upon Baxter's orders to make changes that affected the integrity of the reports and Baxter's unprofessoinal conduct.

36.

Butler's first level grievance was denied.   Butler took his grievance to the next step, submitting it to Major Kilpatrick.

37.

January 23, 2013, after Butler had pursued his grievance to the second level, Major Kilpatrick ordered him to submit to a psychological fitness for duty examination because of the alleged report-writing concerns.

38.

The employer does not have a written and promulgated fitness for duty policy. Defendant Madden submitted a written statement in support of the second fitness for duty examination of Butler.

39.

Butler was ordered to produce copies of his medical and psychological records, and to authorize inquiry into his medical and psychiatric treatment record.

40.

Butler was also ordered to waive his right to review the fitness for duty report.

41.

The employer offered the following reason for requiring Trooper Butler to submit to a fitness for duty evaluation:

"On January 2, 2013, Major Joel Kilpatrick met with Trooper Butler concerning conclusions he [Butler] reached in several crash investigations. Trooper Butler failed or was unable to understand why his conclusions were flawed and not sound."

42.

The department's articulated reasons for the fitness for duty fall far below the required standard. The articulated reason for ordering Butler to submit to a psychological examination was based upon a purely subjective report of a single meeting between Butler and the Major.

43.

Citing his rights under federal and state disability discrimination laws, and his statutory right to review the report, Butler objected to the fitness for duty order. Butler, through Counsel, served written notice upon the employer of his objections to acts of employment discrimination.

44.

The fitness for duty examination order was issued January 23, 2013, and the examination date set for January 29, 2013. Though the employer claims it had concerns about Butler's psychological fitness to function safely as a patrol trooper, its actions belie that claim. Butler was not relieved of patrol duties. He continued

to carry a weapon and to perform all of the duties of a state trooper, including making traffic stops, investigating crashes and writing crash reports.

45.

Had the employer truly considered Butler to be psychologically unfit to perform his duties, Butler would have been relieved of those duties and ordered to relinquish his service weapon. The fact that the employer continued to assign Butler to perform patrol duties is evidence that the employer had no concerns at all about Butler's mental health and something else motivated the employer to order Butler to submit to a fitness for duty evaluation.

46.

Butler was also ordered to provide the examiner with all of his psychological and mental health medical records and to waive his right to review the examiner's report.

47.

The employer's efforts to obtain Butler's medical and mental health records through discovery in the pending lawsuit had been unsuccessful. The employer did not order Butler to submit to a fitness for duty examination and produce his medical records out of any genuine concern that Butler was unfit for duty. Madden was motivated, in part, by a desire to obtain Butler's medical records.

48.

Butler refused to produce his medical records, refused to submit to a psychological fitness for duty examination, and refused to waive his right to read the report of examination.

49.

On April 3, 2013, the Department terminated Butler's employment because he refused to comply with the orders to release his psychiatric records, submit to a psychological fitness for duty examination, and waive his right to review the fitness for duty report.

Rehabilitation Act, §504, 29 U.S.C. §701, *et seq*.

50.

Butler incorporates herein, as if set out in full, the allegations of paragraphs 26 - 49, above.

51.

The Defendant receives federal funds for the purposes of employing Louisiana State Police employees, and federal funds for the employment of state troopers.

52.

The fitness for duty order required Trooper Butler to submit to a psychological fitness for duty examination and to permit discovery of psychological and medical records, medical procedures and any prior psychological or psychiatric evaluation or assessment, regardless of date. This order violated the Rehabilitation Act.

La. R.S. 23:323

53.

The facts stated above also establish a violation of Louisiana's disability discrimination statute, La. R.S. 23:323.

54.

Regulations implementing the ADA specifically 29 CFR §1630.13(b) declare it unlawful under federal law for an employer "to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability" except under very limited circumstances. The employer must show that the medical examination is job-related and consistent with business necessity. This rule applies to the Louisiana disability discrimination statute.

55.

The department's  articulated reasons for the fitness for duty fall far below the required standard.    The articulated reason for ordering Butler to submit to a psychological examination was based upon a purely subjective report of a single meeting between Butler and the Major.

56.

The referral for a second psychological fitness for duty examination establishes that Captain Madden and others within the Department continued to regard Trooper Butler as having a psychiatric or psychological impairment, and to make employment decisions about him on the basis of that perception, in violation of the above-cited laws and statutes.

57.

Through-out this time period, both prior to and after the meeting with Major Kirkpatrick, Butler continued to work on patrol, making traffic stops, issuing citations, and writing crash reports.    Through-out this time his official job performance evaluations reflected that he was performing the duties of his job in a satisfactory manner.

58.

The department violated the above-referenced laws and statutes when it ordered Butler to submit to a fitness for duty examination when there was no objective evidence that he was unable to perform the essential functions of his job.

Nullity of Dismissal from Employment

59.

The articulated reason for termination of Butler's employment was Butler's refusal to obey an order that he  present for a psychological fitness for duty examination, submit  medical and pharmacological records and authorize the disclosure and examination of same, authorize the evaluator to submit a written report to the Appointing Authority and to  waive his right to review the report.

60.

The termination of Butler's employment is an absolute nullity because it violated a prohibitory law.

61.

Unlawful waiver of statutory personnel rights

The order required Butler to sign forms authorizing Matrix, Incorporated  to

release a report to the Department.  The order further stated,  "[Y]ou are to sign the form(s) *waiving the right to review* the Matrix report." [italics added].

62.

The order expressly acknowledges that Butler had <u>a right</u> to review the Matrix report.  That right arises from La. R.S. 40:2533, which states:

No law enforcement officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for personnel purposes by his employer, without the law enforcement officer's having first read and signed the instrument containing the adverse comment indicating that he is aware of such comment, except that such entry may be made if, after reading such instrument, the law enforcement officer refused to sign it.  Should a law enforcement officer refuse to sign, that fact shall be noted on the document and signed or initialed by such officer.

63.

Butler not only had a right to review the Matrix report, he had a right to refuse any order requiring him to surrender the right to review the report.   His refusal to waive the right to review is  protected by La. R.S. 40:2535, which states "[t]here shall be no penalty nor threat of any penalty for the exercise by a law enforcement officer of his rights under this Chapter."

64.

R.S. 40:2535 is a prohibitory law.  It absolutely prohibits the Appointing Authority from threatening to penalize, or penalizing, a law enforcement officer for

the exercise of his rights.    La. Civil Code art. 7 declares that action taken in contravention of a prohibitory law is an absolute nullity.    Consequently, the Department's termination of Butler's employment is  an absolute nullity.


Violation of Right to Privacy

65.

The order to submit to a psychological examination, and to produce all prior medical and psychiatric records and medication records was an unconstitutional invasion of Trooper Butler's privacy.  La Constitution Article I, section 5 guarantees that every person "shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."

66.

Butler's employment as a state trooper did not displace his right to be secure against unjustified public or private invasions of privacy.   As shown above, the Department did not have a legitimate reason for ordering Butler to produce his medical and psychiatric records and submit to a psychological examination.  The order was an unconstitutional invasion of Butler's medical privacy.

Denial of Procedural Due Process

67.

The decision to terminate Butler's employment was based in whole or in part on written comments adverse to Butler created and /or maintained for personnel purposes, but never made available for Butler's review or comment.

68.

The decision to terminate Butler's employment is predicated, in whole or in part, upon the subjective statements of Major Kilpatrick concerning his observations of Butler during an alleged counseling session, Lt. Baxter's secret log, and Captain Madden's adverse written comments about Butler.

69.

These adverse written comments were used for the personnel purpose of evaluating Butler's job performance.   The provisions of La. R.S. 23:3533 required that these adverse comments be shown to Butler and that he be allowed opportunity to respond to the comments.

70.

The adverse written comments were concealed from Butler, in violation of state law.

71.

The termination of Butler's employment, based in whole or in part on the secret personnel file, violates Butler's rights under La. R.S. 23:3433 and  R.S. 23:3435 and his right to procedural due process under Article I,  §2  of the Louisiana Constitution.

72.

Under Louisiana law, the remedy for a violation of statutory or constitutional procedural due process is to declare the adverse employment action an absolute nullity and restore the employee to his position, with full back pay and benefits, but without prejudice to the employer's right to re-institute proceedings in a compliant manner.

**WHEREFORE**, PLAINTIFF PRAYS that this complaint be deemed good and sufficient and that upon conclusion of all due proceedings there be judgment against Defendants and in favor of Plaintiff awarding Plaintiff damages, back pay, costs and attorney's fees, and permanently enjoining Defendants from engaging in discriminatory acts against Plaintiff.

Respectfully submitted:

DOWNER, HUGUET & WILHITE, L.L.C.

By:    /s Pamela R. Jones
      **Pamela R. Jones, No. 19640**
      pjones@dhw-law.com

      401 Market Street, Suite 1250
      Shreveport, LA 71101
      318-213-4444        Telephone
      318-213-4445        Facsimile

**ATTORNEYS FOR PLAINTIFF SCOTT M. BUTLER**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of  **PLAINTIFF'S THIRD AMENDED COMPLAINT** has been served upon counsel for the Defendants by e-mail through the Court's electronic case filing system to the e-mail address on file for:

    Amanda G. Clark               aclark@forresterdick.com
    Forrester Dick & Clark
    4981 Bluebonnet Blvd.
    Baton Rouge, LA  70809
    **ATTORNEYS FOR DEFENDANTS LOUISIANA STATE POLICE AND CAPTAIN TOM MADDEN**

Thus done and signed in Shreveport, Louisiana, this **9**th day of **January, 2014**.

           s/Pamela R. Jones
             OF COUNSEL