## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**SCOTT J. BUTLER**                    **CIVIL ACTION NO. 12-cv-420**

**VERSUS**                             **JUDGE JACKSON**

**STATE OF LOUISIANA,**                **MAGISTRATE JUDGE DALBY**
**LOUISIANA DEPARTMENT OF**
**PUBLIC SAFETY AND**
**CORRECTIONS, LOUISIANA**
**STATE POLICE, AND**
**CAPTAIN TOM MADDEN**

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

Plaintiff seeks an order from this Court compelling Matrix, Incorporated ("Matrix"), a non-party, to produce (1)  a memo dated October 17, 2011 ("the memo")  pertaining to the plaintiff, Scott Butler; and (2) e-mails sent to Matrix, or forwarded to Matrix, concerning Scott Butler.  The documents are responsive to subpoenas issued by Plaintiff to Matrix pursuant to Fed. R.Civ. P. 45.  Matrix has withheld the memo for the following reason:

> It is Matrix Incorporated's opinion that this document does not fall within the exceptions set forth in F.R.Civ.P. Rule 26(b)(4)(C) and are therefore protected from discovery or disclosure under F.R.Civ. P. Rule 26(b)(3)(A) and (B). Additionally, the document is marked "SUBJECT TO ATTORNEY/CLIENT PRIVIELGE" and it is my understanding from speaking to Amanda Clark that DPS/LSP does intend to assert attorney/client privilege as to that document; therefore, until such time as that matter is resolved, Matrix Incorporated will withhold production of this document."  [Ex. 10].

Matrix withheld production of four (4) email "strings" claiming the email "strings" were "not within the exceptions set forth in F.R.Civ. P. Rule 26(b)(4)(C) and therefore protected from discovery or disclosure under F.R.Civ. P. 26(d)(3)(A) and (B)."

Butler contends the memo is not privileged and that the memo and the email strings are discoverable because they are communications by the defendant with fact witnesses, persons whose actions contributed to the discriminatory fitness for duty evaluations that form the basis of his initial and amended complaints. He seeks an order compelling Matrix to produce the documents.

## BACKGROUND

On February 8, 2011, Dr. Cary Rostow of Matrix, Incorporated ("Matrix") performed a psychological fitness for duty evaluation (FFDE) on Louisiana State Police trooper Scott Butler ("Butler") at the request of Butler's employer, the Department of Public Safety ("DPS"), Louisiana State Police ("LSP").  Butler sued the DPS/LSP for disability discrimination, citing as one of the grounds for suit the February, 2011, FFDE conducted by Dr. Rostow at Matrix, Inc.  [Doc 9, ¶5(f).]

In  January, 2013, while a motion to compel Butler to produce medical records was pending, Capt. William Davis of LSP submitted a form to Matrix for purposes of referring Trooper Butler for a second FFDE.  [Exhibit 1.]  On January 23, 2013, LSP issued a written order for Butler to submit to a FFDE at Matrix, to

authorize the release of psychological and psychiatric records to Matrix, and to waive his right to read the Matrix FFDE report. [Exhibit 2.] Butler refused to submit to the second FFDE order on those terms. [Exhibit 3.] Butler's employment was terminated because he refused to comply with the second FFDE order. [Exhibit 4.]

Butler amended his lawsuit to add claims arising from the second FFDE and termination of his employment. [Doc 36.] In defense of the second FFDE, Defendant has cited Matrix's acceptance of the FFDE referral as evidence of the reasonableness of the order. [Exhibit 6, p. 86, ll. 4-8, ll. 15-20; p. 57, ll. 14-24.]

In February, 2013, Butler's counsel subpoenaed Butler's Matrix file. [Exhibit 7.] Dr. Robert Davis assembled the document response to the February, 2013 subpoena. Dr. Davis obtained the documents from a folder that contained all documents maintained on Scott Butler.

When he was putting together the response to the February, 2013 subpoena, Dr. Davis withheld from production a memo from a DPS attorney to LSP Lt. Col. Wynne dated October 17, 2011. [Exhibit 5, p. 25, ll. 14-25; p. 26, ll. 1-12; p. 27, ll. 19-23; p. 30, ll. 1-25; p. 31, ll. 1-4.]

In May, 2014, Butler's counsel issued a second subpoena to Matrix for additional records. [Exhibit 8.] In response to the May subpoena, Matrix disclosed that it was withholding documents on grounds of privilege. [Exhibit 9.]

By letter dated June 5, 2014, Matrix disclosed for the first time that it had withheld documents grounds of privilege.  [Exhibit 9].  On June 20, 2014, Matrix, through its legal counsel, identified the documents that were withheld.  These were (1) a memo from Kathy Williams, legal counsel to DPS, to Lt. Wynne of LSP dated October 17, 2011, withheld from the response to the February, 2013, subpoena; (2) trademarked /copyrighted material withheld from response to the February, 2013, subpoena; and  (3) a string of e-mails between LSP counsel and Doctors Rostow and Davis dated March, 2013 through April, 2013, withheld from the May, 2014, subpoena.  [Exhibit 10.]

On June 26, 2014, Butler's counsel deposed a representative of Matrix, Inc. concerning record production. [Exhibit 5, p. 1.]  The Matrix representative testified that Dr. Davis collected the documents that were responsive to the February 2013 subpoenas and had instructed that the October 17, 2011 memo be withheld. [Exhibit 5, p. 13, ll. 22-25; p. 14, ll. 1-18; p. 24, ll. 16-25; p. 25, ll. 1-25; p. 26, ll. 1-12.]  Dr. Davis died October 31, 2013. [Exhibit 5, p. 9, ll. 14-17.]  Matrix has no record of when it received the memo of October 17, 2011. [Exhibit 5, p. 27, ll. 24-25; p. 28, ll. 1-4.]  Matrix maintained a file of all documents it had received on Scott Butler (the "Matrix file.").  [Exhibit 5, p. 14, ll. 16-18.]  Matrix maintained no documents pertaining to Scott Butler outside of that file.  [Exhibit 5, p. 14, ll. 19-22.]  Matrix had no source of documents concerning Butler other than  LSP

and Butler.  [Ex. 5, p. 29, ll. 5-9].  Matrix has no reason to believe that the memo of October 17, 2011, was provided to it by anyone other than LSP. [Ex. 5, p. 28, ll. 25; p. 29, ll. 1-4].

LSP sent records and documents to Matrix in January, 2013, for purposes of referring Butler for a second FFDE.  LSP Internal Affairs representative Capt. William Davis had been sending documents to Matrix in January, 2013, for purposes of referring Butler for a second fitness for duty evaluation. [Ex. 6, p. 15, ll. 5-25; p. 16, ll. 1-5.   The records Capt. Davis sent to Matrix in January, 2013, had been provided to him through LSP command staff, which included the captain, lt. colonel, and colonel.  [Ex. 6, p. 15, ll 12-25; p. 16, ll. 1-5; p. 33, ll. 17-23].  The memo was likely included within those records.  The memo would have been available to Dr. Davis for his review prior to accepting the second FFDE referral in January, 2013.   Dr. Davis had possession of the memo in February, 2013, when he reviewed the Matrix file for purposes  of responding to the subpoena. [Exhibit 5, p. 31, ll. 5-22.]

## LAW AND ARGUMENT

The memo and e-mails should be produced because (1) they are not communications with a retained expert from whom a written report is required and thus not protected under Fed. R. Civ. P. 26(b) (3) (A) and (B); (2)  DPS/LSP has

never claimed the privilege or has been waived;  and (3) production is necessary to probe and expose attorney-caused bias.

## A.    The Memo is Discoverable

### 1.    <u>Discovery from non-reporting experts</u>

Federal Rule of Civil Procedure 26(b) governs the scope and limits of discovery.  Rule 26(b)((4)(C) applies specifically to discovery of communications between a party's attorney and an expert witness.  This Rule states:

> (C)   Rules <u>26(b)(3)(A)</u> and <u>(B)</u> protect communications between the party's attorney and any witness required to provide a report under <u>Rule 26(a)(2)(B)</u>, regardless of the form of the communications, except to the extent that the communications:
>
>> (i) relate to compensation for the expert's study or testimony;
>>
>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>>
>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Rule 26(b)(3)(A) shields from disclosure the documents and tangible objects prepared in anticipation of litigation, including those prepared by or for an expert witness.   Rule 26(b)(3)(B) applies to shield production of the mental impressions of counsel.   Rule 26(b)(4)(C) extends the protections of Rule 26(B)(3)(A) and (B), beyond documents and tangible things to communications between the party's attorney and certain types of expert witnesses  -- the type of expert witness who is required to provide a report under Rule 26(a)(2)(B).

The restriction on the type of witness is important to proper interpretation of the protection of Rule 26(b)(4)(C).   Only communications between counsel and a witness who must prepare a written report are protected.   If  the expert witness with whom the party's attorney is communicating is not the type of expert witness required to submit a written report, then the communication is not protected from disclosure.    Thus, resolution of this discovery dispute hinges upon whether or not Dr. Rostow and Dr. Davis are the type of expert witness required by Rule 26(a)(2)(B) to provide a written report.   They are not.

Rule 26(a)(2)(B) requires written reports from two types of expert witnesses. See Downey v. Bob's Discount Furniture Holdings, Inc., 633 F. 3d 1, 6 (1st Cir. 2011).  They are:

1.    A witness that is retained or specially employed to provide expert testimony in the case; or

2.    A witness whose duties as the party's employee regularly involves giving expert testimony.

Federal Rule of Civil Procedure 26 (a) was amended in 2010 to clarify that there is a third type of expert witness,  one who is not covered by Rule 26(a)(2)(B) and thus not required to provide a written report.   The amendment to Rule 26(a) added Rule 26(a)(2)(C) to require only a summary of the expert's testimony, not a written report,  if the expert was not retained or specifically employed to provide expert testimony in the case.  The purpose of the amendment was explained in the

case of <u>Coleman v. American Family Mut. Ins. Co</u>., 274 F.R.D. 641, 645 (N>D.

Ind. 2011).  The <u>Coleman</u> decision states:

> Rule 26 was amended effective December 2010, to resolve the tension that led some courts to require expert reports of non-retained experts.  The amendments did not alter who was required to file an expert report under the rule and explained that an expert "retained or specially employed" must submit a complete expert report.  Rule 26(a)(2)(B).  However, subpart C was added mandating summary disclosures in place of complete expert reports of the opinions to be offered by expert witnesses who were not retained or specially employed to give expert testimony.  Rule 26(a)(2)(C).  The committee Notes explain that common examples of experts required to submit summary disclosures include physicians or other health care professionals, Rule 26 (committee Notes, 2010 amendments).  The amendment attempts to clarify the distinction between an expert retained for purposes of providing expert testimony and non-retained experts. See Rule 26(a)(2)(C) and Committee Notes (stating that non-retained witnesses must provide "a summary of the facts and opinions to which the witness is expected to testify." ).  Rule 26 (Committee Notes, 2010 amendments); Crabbs v. Wal-Mart Stores, Inc., 2011 WL 499141,*1 (S.D. Ind. Feb. 4, 2011) (explaining amendments to Rule 26 to determine if treating physician must provide an expert report.).

The protection in Rule 26(B)(4)(C) is limited to communications between an

expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney

for the party on whose behalf the witness.  The rule does not protect

communications between counsel and other expert witnesses, such as those from

whom disclosure is required under Rule 26(a)(2)(C).

Doctors Rostow and Davis were not retained to offer an opinion in Butler's

lawsuit.  The FFDE opinions DPS/LSP sought from Doctors Rostow and Davis are

the reasons for the lawsuit.  It is the fact that the employer sought the opinion of

Doctor Rostow in February, 2011, that prompted the lawsuit and the fact that the

employer sought the opinion of Dr. Davis in January, 2013, that prompted Butler to expand the basis of his lawsuit. Doctors Rostow and Davis are "actors or viewers with respect to transactions or occurrences" forming the basis of Butler's lawsuit. Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Hearing & Air-Conditioning, Inc., No. 07-8446, 2009 WL 981724, at *4 (E.D. La. , apr. 9, 2009) (quoting Fed. R. Civ. P. 26 advisory notes to the 1970 amendment). As such, they are percipient witnesses, who are not required to provide a written expert witness report. Defense counsel's communications with Matrix and its principals, doctors Rostow and Davis, whether directly through sent or forwarded e-mails, or by production of internal legal memos, are not protected from discovery.

### 2.    The privilege has not been claimed

Though Rule 26 does not protect communications between counsel and non-reporting experts, the Rule does not prevent application of other privileges or doctrines. See  2010 Advisory Committee Notes to Fed. Rule Civ. P. 26. "[T]he amended rule neither created a protection for communications between counsel and non-reporting experts witnesses, nor abrogated any existing protections for such communications.

Matrix is not withholding the memo because it is a privileged communication between Matrix and its counsel. Matrix is withholding the memo

because it believed the DPS/LSP "intend[s] to assert attorney/client privilege as to that document." However, undersigned counsel is unaware of any steps DSP/LSP has taken to assert the privilege. DPS/LSP made no effort to retrieve the memo from Matrix when Dr. Davis identified it and withheld it from subpoena production in February, 2013. DPS/LSP made no effort to retrieve the memo in June, 2014. Matrix still had the memo in its possession on June 26, 2014, when its representative was deposed. DPS/LSP has not undertaken any steps to seek a protective order or to otherwise bar Matrix from producing the document.

### 3.    The privilege was waived by production to a third party

"The attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." Conkling v. Turner, 883 F.2d 431, 434 (5th Cir. 1989). Further, "the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests." Hodges, Grant & Kaufman v. United States Government, 768 F.2d 719, 721 (5th Cir. 1985).

The privilege holder, LSP, produced the memo to Matrix, a third person. This is a waiver of any privilege. DPS/LSP provided the document to Matrix through its Internal Affairs section. Captain William Davis, who was head of

Internal Affairs when Butler's FFDE's were requested, testified to the procedure he used to collect records and provide them to Matrix.

Initially the request for a FFDE must come from a commander, along with all of the appropriate documentation. [Exhibit 6 Davis, p. 10, ll. 11-12.] The documentation is presented to the major and the lieutenant colonel. [Exhibit 6, Davis, p. 10, ll. 13-15.] The major and lieutenant colonel meet with the colonel. If a FFDE is desired, they forward the information to IA. [Exhibit 6, Davis, p. 10, ll. 16-19.] IA then "compile[s] that information with a face sheet, or a check list … and provide[s] all that documentation to Matrix." [Exhibit 6, Davis, p. 10, ll. 19-22; also p. 15, ll. 15-25; p. 16, ll.1-5.] The documentation assembled by Internal Affairs is usually hand delivered to Matrix. [Exhibit 6, Davis, p. 11, ll. 11-17]. Internal Affairs provided documentation concerning Scott Butler to Matrix. The procedure described by Captain Davis indicates the memo from a DPS attorney to Lt. Col Wynne was sent to Internal Affairs by the Lt. Colonel or the Colonel, along with other documentation to be sent to Matrix for purposes of referring Butler for a second FFDE. The packet contained all documents the employer wanted the psychologist to review for purposes of the FFDE referral.

The memo was likely contained in the package of documents provided to Matrix in January, 2013, for purposes of referring Butler for a second FFDE. The memo contained information that the referring administrator considered for

purposes of deciding whether to seek a FFDE referral.  The information was sent to IA for purposes of making a FFDE referral.  The memo contained information the employer wanted Dr. Davis to know for purposes of reviewing the second FFDE referral.  Thus,  LSP, the privilege holder, has waived any privilege associated with the memo.

### 4.    Attorney-caused bias

One of the issues in this case is whether or not DPS/LSP's order that Butler submit to a second FFDE in January, 2013, was reasonable or discriminatory.  In support of its argument that the referral was reasonable, DPS/LSP point to the fact that Dr. Davis reviewed the employer's records on Butler and accepted the referral for a second FFDE.  Dr. Davis did not conduct a FFDE on Butler. But he did review Butler's file for purposes of deciding whether or not a fitness for duty appointment would be scheduled. An appointment was scheduled. The employer points to Dr. Davis's consent to the scheduling of a FFDE appointment for Butler as evidence that its FFD referral was reasonable and not discriminatory.

Every document and record Dr. Davis might have seen or considered prior to the scheduled time of Butler's second FFDE is relevant for purposes of probing the employer's argument that the referral was reasonable.  Matrix has no record of when it received the memo.  However, LSP sent Matrix a large number of documents pertaining to Trooper Butler in January, 2013. The memo was

indisputably in possession of Matrix a month later in February, 2013, when Matrix responded to Butler's subpoena. The circumstances strongly suggest that LSP sent the memo to Matrix, or that it was already there and available to Dr. Davis, in January, 2013, when Dr. Davis was considering DSP/LSP's request for a second FFDE appointment.

Attorney-caused bias is an accepted reason for compelling Matrix to produce the memo.   In United States v. Sierra Pac. Indus., 2:09-cv-2445-KJM-EFB, 2011 WL 2119078 (E.D. Cal. May 26, 2011) the court noted:

> [S]ome non-reporting witnesses, such as treating physicians and accident investigators, should be treated differently than reporting witnesses with respect to the discoverability of their communications with counsel. See Minutes, Civil Rules Advisory Committee Meeting (April 20-21, 2009) p. 14 ("The Committee did not want to protect communications by one party's lawyer with treating physicians, accident investigators, and the like. An employee expert, moreover, may be an important fact witness."). These type[s] of witnesses are hybrid fact and expert opinion witnesses. While it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, it is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, Attorney-caused bias." [Emphasis added.]

DPS/LSP claims that the fact that Dr. Davis agreed to conduct a second FFDE on Butler in June 2013 is evidence of the reasonableness of the referral. Butler is entitled to discovery all information known to Dr. Davis.  Production of

the memo is necessary to probe and expose any attorney-caused bias that could have affected Dr. Davis's decision to accept the second FFDE referral.

**B.    The email strings are discoverable**

Matrix identified five (5) email strings responsive to the second subpoena. The emails, dating from February 27, 203 through April 26, 2013, are between Defendant's counsel, Amy Newsom, and her staff, and Doctor Rostow and /or Dr. Davis.  Matrix produced one string and part of another, but withheld most of the second string and all of the others.   The articulated reason for withholding the emails is that they are "not within the exceptions set forth in F.R.Civ. P. Rule 26(B)(4)(C) and are therefore protected from discovery or disclosure under F.R.Civ. P. Rule 26(b)(3)(A)."

As outlined above, Doctors Rostow and Davis, though experts, are also fact witnesses.  Doctor Rostow's report, and the events that led up to it, are among the reasons Butler sued for disability discrimination.   Dr. Davis's role in the second FFDE is also a factual foundation for the lawsuit.  Because Doctors Davis and Rostow are fact witnesses, and not specially retained expert witnesses, Defense counsel's emails are discoverable, just as communication with any other third party would be discoverable.

Respectfully submitted,

DOWNER & WILHITE, L.L.C.


By:_____/s/ Pamela R. Jones_____
           Pamela R. Jones,  No. 19640
           401 Market St., Ste. 1250
           Shreveport, LA  71101
           318-213-4444
           318-213-4445 (fax)
           pjones@dhw-law.com
           ATTORNEYS FOR PLAINTIFF
           SCOTT M. BUTLER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document has been served upon counsel for the Defendants by e-mail through the Court's electronic case filing system to the e-mail addresses on file for:

AMANDA CLARK                 aclark@foresterclark.com
Forrester  & Clark
4981 Bluebonnet Blvd.
Baton Rouge, LA  70809
**ATTORNEYS FOR DEFENDANTS STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, LOUISIANA STATE POLICE, AND CAPTAIN TOM MADDEN**

Thus done and signed in Shreveport, Louisiana, this 30th day of June, 2014.


           _____/s/ Pamela R. Jones_____
           OF COUNSEL