# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SCOTT BUTLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-420-BAJ-RLB** |
| **STATE OF LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al** | |

## RULING ON PLAINTIFF'S MOTION TO COMPEL MATRIX, INC.

Before the Court is Plaintiff's Motion to Compel (R. Doc. 51) non-party, Matrix, Inc., to produce documents requested through a Rule 45 subpoena. Defendant opposes the Motion to Compel on grounds of privilege. (R. Doc. 56). The subpoenaed non-party, Matrix, Inc. (Matrix), filed an Opposition as well. (R. Doc. 76).

## I.  BACKGROUND

Relevant to this Motion, Plaintiff's Complaint alleges that Defendant violated the Americans with Disabilities Act (ADA) by ordering him to undergo a second unwarranted fitness for duty evaluation (FFDE) in January of 2013. (R. Doc. 36). Defendant contracted with Matrix, Inc. to perform the FFDE. According to the record, Matrix required Defendant to provide corroborating documents along with any request for an FFDE of one of its employees. Matrix would then review the documents, and either approve or deny the requested FFDE. (R. Doc. 51-8 at 2-3). The documents submitted by Defendant in connection with the 2013 FFDE were reviewed by Dr. Robert Davis, who approved Defendant's request to psychologically

evaluate Plaintiff. (R. Doc. 54 at 5-6). The second FFDE, however, did not take place. (R. Doc. 40 at 5). Since then, Dr. Davis has passed away.

During discovery, Plaintiff issued two subpoenas to Matrix, both requesting the following documents:

(1) All communications concerning Plaintiff that took place between Matrix, or one of its agents, and "<u>any other person</u>," from February 8, 2011 through the present.

(2) All documents concerning Plaintiff that were created by Matrix, or one of its agents, between February 8, 2011 through the present.

(3) All documents concerning Plaintiff that were received by Matrix, or one of its agents, between February 8, 2011 through the present.

(R. Doc. 51-10 at 2). The first subpoena, issued on February 7, 2013, commanded production on February 25, 2013. (R. Doc. 51-9). Matrix timely provided documents, but its response made no mention of any documents that were withheld pursuant to the attorney-client privilege. The second subpoena was issued on May 5, 2014 and commanded production by May 20, 2014. (R. Doc. 51-10). On June 3, 2014, Matrix wrote a letter to Plaintiff's attorney identifying the documents produced in response to the first and second subpoena and explaining that "there are no additional records for the period other than those noted as attorney/client privilege." (R. Doc. 51-11). According to Plaintiff, Matrix's June 3 letter was the first indication that any documents had been withheld, in response to either subpoena, as subject to the attorney-client privilege. (R. Doc. 51-1 at 4). On June 20, 2014, Matrix identified the documents withheld in response to Plaintiff's February 2013 and May 2014 subpoenas as:[1]

(1) October 17, 2011 Memorandum from Defendant's in-house counsel, Kathy D. Williams to LTC Brian Wynne concerning Plaintiff; and

---

[1] Matrix did withhold, in response to the first subpoena, certain pages of the February 8, 2011 Personality Assessment Inventory Clinical Interpretive Report administered to Plaintiff by Matrix psychotherapist, Dr. Cary Rostow, in connection with Plaintiff's first FFDE in February of 2011. These pages of the PAI were withheld pursuant to a trademark, and do not appear to be at issue in Plaintiff's Motion to Compel.

2

(3) Five "string[s] of e-mails" exchanged during February 27, 2013 and March 19, 2013 between Defendant's trial counsel and Matrix psychotherapists, Dr. Rostow and Dr. Robert Davis.

(R. Doc. 51-1 at 4); (Matrix Letter, R. Doc. 51-12 at 2). Matrix explained that the October 17, 2011 Memorandum written by Defendant's in-house counsel, and the string of email communications between Defendant's trial counsel and Matrix, were "being withheld from production" pursuant to the attorney-client privilege. (R. Doc. 51-12 at 1-2).

## I. APPLICABLE LAW

The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice. The privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). As such, when the privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Conkling*, 883 F.2d at 434. In other words, a waiver occurs when the holder pleads a claim or defense in such a way that it will inevitably have to "draw upon a privileged communication in order to prevail." *Conono Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998). The attorney-client privilege is also waived if the holder of the privilege voluntarily discloses any significant part of the communication. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege.").

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain its opponent's work product — "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Work product protection is not absolute, however. Like the attorney client privilege, opinion

3

work product may be disclosed when the holder waives the protection by placing the protected material "at issue" in the litigation. *Conono Inc.*, 191 F.R.D. at 118. Work product protections may also be waived through disclosure to a third party, although the analysis is slightly different from that of the attorney client privilege in this regard. Unlike the attorney client privilege, "waiver of work product immunity requires more than the [mere] disclosure of confidential information;" rather, "the disclosure must be inconsistent with the adversary system." *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. 1985).

## II. PRIVILEGED MEMORANDUM

### A. Waiver by Disclosure

Defendant contends that disclosure of the October 17, 2011 Memorandum drafted by its in-house counsel (Memo) to Matrix did not waive either the attorney client privilege or any work product protections because it was inadvertent. When information protected by the attorney-client or work product privileges is disclosed to a third party during discovery in a federal proceeding, Rule 502(b) of the Federal Rules of Evidence provides that a waiver does not result if: (1) the disclosure is inadvertent; (2) the privilege holder took reasonable steps to prevent disclosure; and (3) the holder promptly took steps to rectify the error. Additionally, courts in this Circuit apply the five-factor test originally articulated in *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. 1985), and later adopted by the Fifth Circuit in *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993). The *Hartford* test considers "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error, (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Hartford*, 109 F.R.D. at 332.

Applying the *Hartford* test, Defendant first contends that its disclosure did not constitute a waiver because "one two page memo [was] inadvertently disclosed out of nearly 80 pages sent to Matrix." (R. Doc. 56 at 9). While in some instances courts will find a disclosure inadvertent where a voluminous amount of documents are produced, and some subject to the attorney-client privilege simply get "lost in the shuffle" — this is not one of those situations. *Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, 2006 WL 1544621, at *3 (W.D. Tex. May 31, 2006). Despite Defendant's suggestion that the disclosure was inadvertent on this ground, Defendant only provided 80 pages of documents to Matrix. This amount is inconsequential when compared to cases accepting a party's 'lost in the shuffle' argument — which typically involves the production of thousands of documents. *See, e.g.*, *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 485, 490 (N.D. Miss. 2006) (privileged documents were lost in the shuffle and therefore inadvertently disclosed where they were contained within 4,600 pages of documents produced); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 140-41 (E.D. Tex. 2003) ("ISC has produced more than 78,000 pages of documents. Considering the massive scope of discovery in this case, ISC's inadvertent production of two privileged documents is understandable."); *Myers v. City of Highland Village, Tex.*, 212 F.R.D. 324, 327-28 (E.D. Tex. 2003) ("The City estimates that it produced documents containing approximately 1,500 pages. In producing this many pages, it is possible that a mistake will be made."). And so, this factor weighs against Defendants.

Next, Defendants argue "Regarding the time between notice of the disclosure and action to assert the privilege, the important fact is that as soon as Matrix identified it was in possession of the document, defendant asserted privilege over the document and requested that it not be produced to plaintiff." (R. Doc. 56 at 9-10). Unfortunately, the record does not support this

contention. The major flaw in Defendant's argument is that merely requesting that the document not be produced to Plaintiff is insufficient to rectify the alleged error. The erroneous disclosure, if any, is the disclosure to Matrix. To date, there is nothing showing any effort by Defendant to get the Memo back from Matrix. Instead, the record indicates that Matrix's 30(b)(6) deponent, Cheryl Calkins, had the Memo with her and referred to it during her June 24, 2014 deposition — after Defendant claims to have learned of the disclosure — and that Defendant raised no objection to the Memo being in Ms. Calkins possession. (30(b)(6) Dep., R. Doc. 76-1 at 8). Additionally, a letter written by Dr. Rostow on July 25, 2014 refers to the Memo and explains that it was "part of the materials submitted by the State Police, but that it was irrelevant in reaching my opinion that the second FFDE was appropriate." (R. Doc. 67-33 at 2). Not only does this show no effort by Defendant to rectify the erroneous disclosure, it further supports that multiple people at Matrix, other than Dr. Davis, continue to have access to this Memo.

Moreover, Matrix's response to the second subpoena on June 20, 2014 explains "it is my understanding from speaking with [Defendant's counsel] that DPS/LSP does intend to assert attorney/client privilege" over the Memo. (R. Doc. 51-12 at 1). However, Plaintiff points out that no steps were taken by Defendant, before its Opposition to this Motion to Compel, to formally assert the privilege. Defendant did not file a privilege log, or otherwise move to quash the subpoena to protect its interests. *See Murray v. Gemplus Intern., S.A.*, 217 F.R.D. 362, 366 (E.D. Penn. 2003) ("The Court finds persuasive the fact that Gemplus . . . took absolutely no action to recover its documents until August 19, 2003 — eleven weeks after Gemplus was informed of the disclosure and one week after Plaintiff filed the instant Motion to Compel."). Finally, it allegedly took Defendant over a year to realize the document had been disclosed to Matrix back in January of 2013, even though Defendant's practice was to keep a copy of the

6

FFDE requests it sent to Matrix. (Davis, Dep., R. Doc. 51-8 at 3). As such, Defendant has not taken reasonable steps to rectify the disclosure. *See Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 183 (N.D. Cal. 1990) (privilege waived where, although plaintiff "acted to recover the letter as soon as" it learned of disclosure, "this was not until six weeks after production").

As discussed below, the record also establishes that the Memo was among the documents Dr. Davis reviewed in connection with his approval of the second fitness for duty evaluation. Numerous other employees of Matrix have likewise reviewed the Memo. In other words, the extent of the disclosure is complete as the contents of the document were learned by a third party. *See United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 490 (N.D. Miss. 2006) (explaining "extent of disclosure" – "the disclosure was complete in that the contents of the documents were probably learned on inspection and copies of the documents were actually turned over, which favored a finding of waiver.").

Concerning the reasonableness of the steps taken to prevent disclosure, this factor also weighs against Defendant. Captain William Davis prepared, and submitted to Matrix, the 2013 Pre-Fitness for Duty Evaluation Form and its attached documentation. (Davis Affidavit, R. Doc. 72-1 at 1). During his May 1, 2014 deposition, Captain Davis gave a detailed explanation of the steps taken by Defendant before submitting its request for the second FFDE to Matrix in 2013. (Davis Dep., R. Doc. 51-8 at 2-6). According to Captain Davis, "the request for fitness for duty has to go up the chain from a commander, with all the appropriate documentation . . . ." (R. Doc. 51-8 at 2). Captain Davis then specifically explained the steps that occurred before ordering Plaintiff to submit to a second fitness for duty evaluation in January of 2013:

> In this case, the information would have been gathered by Captain Madden, Major Kilpatrick, information that would - - that they learned they presented to then Colonel Wynn, Brian Wynn . . . . And that information was discussed with the chief of staff as to whether or not the behaviors met the criteria or should be

7

> forwarded to Matrix in a request for a fitness for duty evaluation. But this information that they - - all the information that they provided, I then gather - - once the chief of staff approved us moving forward with a fitness for duty request, I gathered the information and then put a cover sheet on that information and forwarded it to Matrix.

(Davis, Dep., R. Doc. 51-8 at 4-5).

According to Major Kilpatrick, he initially compiled and "review[ed]" the information referred to by Captain Davis, which included all of the "documentation relating to S/T Butler since his transfer to Troop G in November 2010." (R. Doc. 67-20 at 2). This consisted of only 80 pages. Those 80 pages were then reviewed several times, by multiple people, who later met with each other to discuss the documents. One of those individuals was Colonel Brian Winn — the very person the Memo is addressed to. The Court, therefore, cannot accept Defendant's contention that this disclosure was inadvertent, when considering the very deliberate steps taken by Defendant before providing the Memo to Matrix. *See Bud Antle, Inc.*, 131 F.R.D. at 183 (privilege waived where plaintiff did not take reasonable precautions to prevent disclosure; plaintiffs failed to detect privileged letter among documents despite two people, including plaintiffs' counsel, handling and reviewing documents before production).

The final *Hartford* factor concerns the overriding fairness of finding a waiver. "The issue of fairness must logically center around the use of the inadvertently produced documents . . . ." *See United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 491 (N.D. Miss. 2006). As discussed in the following section, this factor also weighs in favor of disclosure because Defendant has placed the document at issue in this litigation. An *in camera* review of the Memo confirms that the subject matter of the Memo relates, in part, to a FFDE. Therefore, the Court finds the Memo is no longer protected by the attorney-client or work product privileges because it was voluntarily disclosed to Matrix.

8

**B.     At Issue Waiver**

In a disparate treatment claim, "the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (courts should conduct a snapshot inquiry into the employer's motive at the exact instant the decision was made)).  In its Motion for Summary Judgment (R. Doc. 67), Defendant argues that its first and second fitness for duty exam was "clearly job related and a business necessity." *See* 29 C.F.R. § 1630.14(c) (ADA permits employers to "require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity").  To establish its affirmative defense, Defendant must demonstrate that, before the evaluation, its concern that Plaintiff could not safely perform the job was objectively reasonable. *See, e.g.*, *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999) ("for an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job").  Defendant uses Dr. Davis' approval of their 2013 FFDE request to bolster their affirmative defense by explaining that Matrix's exam process "is specifically aimed at evaluating the ability of the examinee to perform" the essential functions of the job. (R. Doc. 67-1 at 24).  In other words, Matrix's approval of an FFDE request shows the request is job related and consistent with business necessity.

In order to obtain an FFDE by Matrix, Defendant was required to provide documentation showing why the evaluation was needed.  Defendant does not dispute, and in fact confirms, that the Memo was among the documents presented to Matrix's psychiatrist, Dr. Davis, in support of the 2013 FFDE request. (Davis Affidavit, R. Doc. 72-1 at 1) (Davis provided Memo to Matrix in connection with 2013 FFDE request); (30(b)(6) Dep., R. Doc. 76-1 at 7) (Memo was in Butler's

9

file). Nonetheless, both Defendant and Matrix argue the memo is not at issue because there is no evidence Dr. Davis actually reviewed or relied on it in approving the second FFDE in January of 2013. Defendant suggests that simply "because [the memo] was likely in [Dr. Davis'] possession at the time of [the second FFDE request] determination," in no way indicates that Dr. Davis relied upon or even read it. (R. Doc. 56 at 8). It is therefore irrelevant, not at issue, and not subject to disclosure. The question becomes whether providing the Memo to Matrix in support of the 2013 FFDE placed the Memo at issue. Based on the evidence supplied by the parties and Matrix, the Court finds that it does.

As Defendant explains, "Matrix has a specific protocol used for every officer, which includes <u>reviewing documents from DPS</u> and determining whether the exam is warranted." (R. Doc. 67-1 at 24) (emphasis added). Matrix's 30(b)(6) deponent, Cheryl Calkins, explained that employers are required to fill out Matrix's "Pre-Fitness for Duty Evaluation (FFDE) Report Form" (Pre-FFDE Form), and attach any documents, supporting their request, to that form. Matrix then reviews the form and all of its attachments. (Matrix 30(b)(6) Dep., R. Doc. 76-1 at 10); (2013 Pre-FFDE Form, R. Doc. 67-21).[2] When specifically asked which documents Dr. Davis would have reviewed before approving the second FFDE, Ms. Calkins gave the following testimony:

> Q: Whether or not [Dr. Davis] reviewed other documents you don't know?
>
> A: I would not say that. Any documentation that would have been provided by state police would have been given to Dr. Davis. Exactly what documents those were, I do not know. In order for him to make a decision about the fitness for duty, he would have had to have reviewed all of the documentation we have on file.

---

[2] The process described by Ms. Calkins is consistent with the one followed by Dr. Rostow before approving Defendant's 2011 FFDE request. In 2011, Defendant attached four letters to its Pre-FFDE Form. (2011 Pre-FFDE Form, R. Doc. 67-15 at 3). According to the "Documents Reviewed" section of Dr. Rostow's post-examination FFDE report, the Pre-FFDE Form and all four of those letters were considered by Dr. Rostow "prior to the evaluation." (Rostow's FFDE Report, R. Doc. 67-18 at 4).

10

> Q: What makes you say that?
>
> A: Because that was the standard of care that he provided.

(30(b)(6) Dep., R. Doc. 67-1 at 6). Thus there is clearly evidence supporting that Dr. Davis reviewed all of the records in Plaintiff's file that were provided by Defendant in connection with the 2013 Pre-FFDE Form, as was consistent with Dr. Davis' "standard of care" and Matrix's procedures.

Moreover, the Court cannot accept Defendant's contention that providing the document to Dr. Davis was insignificant. As Dr. Rostow testified in reference to Matrix's procedures: "We asks the department to provide us with written documents from whatever sources, memorandum, disciplinary notes, reports from supervisors, because that becomes *their input*." (Rostow, Dep., R. Doc. 63-1 at 7). Regardless of Defendant's insistence that the Memo is irrelevant to their second FFDE request, both Ms. Calkins' and Dr. Rostow's testimony make clear that from Dr. Davis' perspective the Memo, along with the other 80 pages attached to the 2013 Pre-FFDE Form, represented Defendant's "input" on why the exam was warranted — something he certainly considered.[3]

And so, the Court finds that by raising the affirmative defense of business necessity and by citing Dr. Davis' approval of the 2013 FFDE request to bolster that defense, Defendant has placed all of the documents provided to Matrix, including the Memo, at issue in the litigation. Therefore, Defendant has waived both the attorney-client privilege and work product protection as to the Memo, and it must be produced. *See, e.g.*, *Coleman v. D.C.*, 275 F.R.D. 33, 35, 37 (D.D.C. 2011) (all "documents, communications and electronically stored information" relating to the circumstances under which plaintiff was referred for a fitness for duty exam were relevant

---

[3] As the Court noted above, the Memo specifically addresses a fitness for duty evaluation.

and discoverable where defendant asserted business necessity defense); *U.S. Equal Emp't Opportunity Comm'n v. Dolgencorp, LLC*, 2014 WL 3734361, at *3 (N.D. Ill. July 29, 2014) ("Dollar General has consistently indicated that it will assert a business necessity defense, and EEOC is entitled to discovery regarding that defense."); *Sanders v. Ill. Dep't of Mgmt. Servs.*, 2012 WL 549325, at *12 (C.D. Ill. Feb. 21, 2012) (court determining whether a medical inquiry was job related and consistent with business necessity must consider "[w]hether a reasonable employer would have done so, given the evidence Defendant had" when the medical exam was ordered).

## C. Discovery from Experts

Defendant additionally argues that the Memo is irrelevant because it was not considered by its "retained expert" Dr. Rostow in forming his opinion regarding the second FFDE request. To begin, Rule 26(a)(2)(B) requires a party to produce "the facts or data considered by [its retained expert] witness in forming" the expert's opinion. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). The 1993 Advisory Committee Note to Rule 26(a)(2)(B) explains that the term "considered" includes any information provided to the expert, as opposed to only that information relied upon by the expert. Based on this note, courts have consistently required disclosure of the materials provided to testifying experts without consideration of the expert's actual reliance on any particular information. *See, e.g.*, *Estate of Manship v. U.S.*, 236 F.R.D. 291, 295 (M.D. La. 2006) ("Rule 26(a)(2)(B) exceeds the more narrow definition of relied upon, referring instead to any information furnished to a testifying expert . . . even if such information is ultimately rejected"), *partially vacated on other grounds by* 237 F.R.D. 141 (M.D. La. 2006); *TV-3 Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 492 (S.D. Miss. 2000) ("We further interpret the word 'considered' . . . to encompass . . . all documents . . . reviewed by the experts in connection with

12

the formulation of their opinions, but ultimately rejected or not relied upon."); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) ("A testifying expert must disclose and therefore retain whatever materials are given him . . . even if in the end he does not rely on them . . . , because such materials often contain effective ammunition for cross-examination."). Without deciding whether Dr. Rostow is actually a retained expert, the Court finds that if Defendant insists on holding him out as one, the Memo must then be produced for this reason, as well.

### III. PRIVILEGED E-MAIL COMMUNICATIONS

Plaintiff also moves to compel allegedly privileged e-mail communications between Defendant's trial counsel, and agents of Matrix, including Drs. Rostow and Davis. The emails were withheld by Matrix as privileged attorney-client communications. Whether they are, however, is irrelevant as the Court finds them neither relevant nor likely to lead to the discovery of relevant evidence. As previously discussed, evidence relevant to Plaintiff's claim that his second FFDE was discriminatory is evidence that existed or was known to the employer at the relevant time. The e-mails at issue cannot show that Defendant's counsel somehow influenced Matrix's approval of the FFDE in January of 2013, as they all post-date the relevant time period. As such, the Court finds that they are not discoverable.

### IV. CONCLUSION

For the reasons discussed above, it is ordered that Plaintiff's Motion to Compel (R. Doc. 51) is **GRANTED in part** and **DENIED in part**.

Plaintiff's Motion to Compel is **GRANTED** as to the October 17, 2011 Memorandum that was provided to Matrix by the Defendant. Matrix is **ORDERED** to **produce** the **Memo** to Plaintiff within **7 days** of this Order.

13

Plaintiff's Motion to Compel is **DENIED** as to the withheld e-mail communications between Defendant's counsel and agents of Matrix.

Signed in Baton Rouge, Louisiana, on August 6, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**